The final case this morning, U.S. v. Perez. May it please the Court, Counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Mr. Perez. A defendant is entitled to a fair sentencing hearing presided over by an impartial judge. Under 28 U.S.C. § 455a, a judge must recuse himself from any proceeding where the judge's impartiality might reasonably be questioned. My client didn't get a hearing by an impartial judge, and that's demonstrated by the facts that occurred at the July 31, 2018, hearing, which was supposed to be the sentencing hearing but essentially resulted in a status where the judge told the government that it was dissatisfied with the evidence that was presented, wanted to sentence my client to something that reflected criminal punishment based on more than the 98 grams that was accounted for in the PSR. The PSR had been unobjected to, and the government forthrightly told the evidence in its possession, the credibility of its witnesses, the inability to corroborate information that the judge would apparently want to have to impose the higher sentence that the judge wanted to impose. Nevertheless, the judge told the government that it was continuing the case, and it did. And in doing so, the judge, in my view, set up red flags everywhere because the judge is supposed to preside over an impartial proceeding. And when you are giving one party directions to go and accumulate evidence, to tell the court where the defects are in that evidence for some of the witnesses so that the judge quote, doesn't rely on that too much, to then have the government present witnesses, which it was not going to present at the July 31 hearing, to present documentary evidence, which was not presented at the July 31 hearing. And the judge ultimately relied on all of these things to impose a sentence that was not within the 33 to 41 month guideline range, but was 121 months. But how come you didn't challenge the sufficiency of the evidence underlying the guidelines determination? It's kind of implicit in your brief that, well, the government thought this case was weak, that the evidence wasn't really there, and then the judge took it over, and then lo and behold, this weak evidence justified the sentence. And then why didn't you challenge the evidence? If I thought I could get one of these three members on this panel to bite at that argument, I would have made it in all capital letters. But the standards of review and the discretion that we accord the district court judges puts me in an enormous hole on that judge figure. Well, the same is true under the 455A standard. No, I think it's different, because we don't have reliability and credibility that we're allowed to accord the district court judge, because we don't have those sort of assessments under 455A. We are instead assessing things based on what the reasonable person, the well-informed person would be in the courtroom that day. And that's essentially for you to gauge that. Where the judge says that we're looking at a witness, and I think that it's interesting that he said the witness doesn't have to be a saint. Well, this witness was far from a saint. This was a person who had convictions of crimes involving dishonesty. She was a heroin addict. And yet the judge said she was credible. If I thought that I could come up here and contest that evidence, I would have judged Barrett. But I don't think under the case law, I'd have gotten very far. Judge Hamilton, I'm sorry. Did you have a question? Well, I guess, let me put it this way, Mr. Hillis. My question here is how pure the adversarial process has to be, right? Because... Better than this. Well, distinguish this case from some of these situations. The judge asks the witness questions that counsel did not ask and elicits evidence that turns out to be decisive. No problem. Okay. The judge, in a civil case, reviews a complaint or an answer and realizes that the party actually has a better theory available to them than they indicate in a pretrial conference or something like that, and articulates that for them. Okay. Extant information that's considered part of the same proceeding, not continued and then developed and glossed, et cetera. It's a pretrial conference where the judge, in essence, redirects the party in a way that winds up hurting the opposing party, but may, in the terms of Rule 1, lead to the just, speedy, and inexpensive determination of the case. It'll be a matter of degree, like it is under any 455A determination. That's why every case is to be decided on specific facts. It's hard to draw lines. Okay. Let me throw a hypothetical from the other direction here. The parties present a plea agreement to the judge in a criminal case. The judge looks at the case and concludes no crime has been committed. Should the judge do something about it? May the judge do something about that? The administration of justice would be an interesting angle there. That's a far cry from here, where we have admitted a fat judge. That's a hard parallel to draw. Can I give an example, though? No. If I were to tell this court ... The reason I'm asking you about that, though, is because it's one where the seeming bias that might be argued would be from the government, saying the judge intervened here to tell this guy who's ready to plead guilty that he's actually not committed a crime at all and he ought to go free. I can direct you to a case from the Southern District of Indiana where this happened and the judge directed the appointment of new counsel to develop the arguments and resulted in dismissal of the charges. Is that over the line? I don't think in that instance it is either, Judge, because the judges got a duty, of course, from the administration of justice, where you recognize that something is not an offense. I would say that's similar to where this court has individuals come up. It's a little different and they haven't established jurisdiction. The court is entitled to raise subject matter jurisdiction and so it would be similar to that. But this is very different from that. This would be, in my view, more akin to if the three judges here today would say, I think that you had a good argument that you missed on something else, why don't you go forth and get all that evidence, cite case law, come in and marshal your facts and we'll see how we do next week. We do that sometimes. I take it to that. Not yet today, but where we, for example, overlook a waiver of an argument or direct supplemental briefing, right? I've been on the other end of waiver issues, Judge, but I understand the point. Yes, I would like the court to be fair always, but the thing is, I think that the court in this instance was championing something very overtly for the government. I don't think, if we go back to the well-informed, reasonable observer in the courtroom that day, for all of the folks who would have been there to hear that, I don't think they could do anything other than think the finger was on the scale. What if this were prior to the sentencing guidelines and the judge gave them the maximum sentence? The 41 months? We wouldn't have appealed. But the problem was the judge reconstituted the guidelines and came up with the range that was needed. I want to say prior to the guidelines. Before the guidelines? That's it. Before you graduated from elementary school, perhaps, Mr. Thomas? I don't know. It seemed like the Wild West to me back then, Judge, but we complained plenty about the guidelines, too. I just think for the appearance of impropriety here, the rationale... What if the judge had not said anything to any great extent? Do you have the same case? No. I think I have a harder case. If the judge didn't say anything, but here he tipped his hand very definitely, so that helps us make our case, Judge Keene. He didn't say anything for the defense, and I want you folks on your side to go get more mitigating evidence. This was a one-sided, this was a lopsided affair that resulted in an impartial, or excuse me, a judge who exceeded the bounds of what his duty was to be an impartial presider. So what... Justice Breyer, who, as you know, wrote the guidelines, the original set, has often is a compromise between so-called charge sentencing system and a real offense sentencing system. It's a compromise. So what... Suppose you're the district judge. You see a disconnect between what the parties are presenting for a guideline calculation on relevant conduct and what you see in the PSR. What are you supposed to do about that? What can you do about it? It's easy. You'd look at the statutory factors, 3553A. You make your record based on what the evidence is to support the upward variance, and you impose a sentence based on that, Judge. That's been the law for a long time now. The judge had that power available to him. I think judges like to operate with the safety net of the guidelines, and so here, that's what the judge did. He wanted a different guideline range. He was very able to have gone through on a sentencing hearing on July 31st with the evidence that the party is part of an adversary system presented to him and impose sentence then, and if he could have justified a 121-month sentence, so be it. We would have been up here perhaps challenging the sufficiency of the explanation, but those are the statutory parameters. 3553A, the judge should have imposed sentence under 455A. He should have not exceeded the bounds of where he should have been as an impartial presider over what should have been a fair sentencing hearing, and there was nothing that cut to the benefit of the defense in there. It was all one-sided. It was for the government, and it made for what we heard. Did you represent the defendant? I did not, Judge. And I think the defense counsel had his hands full. He saw the writing on the wall. He came back and presented the best evidence that he could, but under 455A, it's sui sponte for the judge to recuse himself based on the appearance of his partiality, I should say, Judge. With that, I reserve the balance of my time to 19 seconds. Thank you. Good morning. David Reinhart for the United States. The district judge did not act impartially in this case. He didn't have a duty to recuse himself. He was simply trying to get to a just and appropriate sentence in the case. The judge was concerned that the uncontested offense conduct didn't square up with the guideline range, and the  addressing the guideline range. So he took a step back, pumped the brakes, sought further clarification from both sides as, hey, what can I rely upon in this case? What is reliable in this offense conduct, and what is not? Because in his opinion, there was a mismatch. And that's not overstepping. That's being careful, reasonable, and a reasonable, informed observer would understand the court's concern if they were sitting in the back of the courtroom. Look, I've got this offense conduct, and I have this range. Of all the defendants that I've sentenced in this courtroom, it just doesn't seem to match up. So I think the judge ultimately was trying to get it right. There was no improper motive. He wasn't out for this defendant. All his opinions were formed during the course of the litigation in this case. There's no deep-seated antagonism or favoritism, which is really what is required. This isn't that rare case. There's no extrajudicial things that are in this case. I think there's one overstatement asserted by the defense is that the judge ordered the government to go out and collect more evidence. All the evidence was already in the PSR. Again, the judge was concerned about what is reliable, what is not reliable. The additional pound of marijuana that was added, that was already set forth. I'm sorry, methamphetamine. The additional pound of methamphetamine, that was already set forth in detail in three paragraphs, and then the government called the witness to establish the reliability of that evidence. The defense got the opportunity to vigorously cross-examine that particular defendant. Again, at first, it was uncontested. Actually, the defense got a crack, a second crack at this witness. All that had been kept out of the relevant conduct calculation in the original PSR. Is it correct, Mr. Reinhart, that the judge quizzed you pretty hard at that July 31 hearing and you, if I recall correctly, were pushing back on this we aren't confident we could actually support, it's in the PSR, that's not reliable, and so on. There was pretty close parsing. Correct. I think a lot of it had to do with trying to quantify in a guideline range some of the evidence, like these DEA seizure notices. How do you... This was for the half million dollars or so. Correct. How do you quantify that in a relevant conduct analysis? Same thing with the drug ledgers. You had money, but you didn't have a type of drug. You didn't have this is one kilogram and this is $300,000. I think the challenge was that how are we going to quantify these things? That's why we had the discussion with the judge in regards to that, because he clearly saw that, hey, this is bigger than just 98 grams of heroin. Why not take the approach that Mr. Hillis proposes? That is, take the record, take the PSR with your editorial comments, defense counsel's comments, stick with the guideline calculation based on 98 grams of heroin and vary upwards under 3553A. You've got disparities with other defendants. You've got, in essence, an understatement of the severity of the conduct. I think that certainly could be done, but I think the court was still concerned about what can I rely upon as far as the offense conduct. I think he had some questions that he wanted answered before he would arrive at his sentence in this case. So he was really, in my opinion, concerned with the evidence. I don't see how that's inappropriate to take a step back to try to get a full handle on the offense conduct. In the end, if the judge could have sentenced the defendant to 121 months originally, then where's the prejudice in this particular case against the defendant? I think the bottom line is the judge acted reasonably and appropriately and nowhere near the standards that are set forth in the recusal case law. If there aren't any questions, I would ask this court to find them. Is there a minimum and maximum sentence in this offense to which you plead guilty? There was no mandatory minimum, but it was a 20-year maximum sentence. It was, I think, 2 grams below the mandatory minimum. So it was a 20-year max? 20-year max, correct. We'd ask that this court find that the district court did not have a duty to recuse itself. Thank you. I think I was beyond my time, so thank you, Judge Kagan. Well, I'll give you a couple minutes if you want them. Thank you. I'll take as little as I can be here to do this, but I want to begin with this. We don't have to show prejudice. That's not the standard. And furthermore, we don't have to show deep-seated antagonism. That's not required. We have to show under the statute that a reasonable, well-informed person would have perceived that the judge was not impartial there. That's what we have to show under the statute. These other things are much higher burdens than we should have to bear, and they're not what the statute says. So if I may also say that the evidence was not just in the PSR. There was additional evidence. It was 40 pages of evidence from the testimony of Ms. Barrera. So we can't say that it was all before the judge and the judge had all that he needed to and we don't have to show that the witness's testimony was anything more than the 40 pages show that it was. Additional evidence. The judge relied on additional evidence in several places. If he hadn't continued the sentencing hearing past July 31st, this doesn't come in. The record then doesn't support what the judge's conclusion was. And it doesn't matter that he could give a 121-month sentence. We're not contesting that he had the lawful authority to impose a sentence up to 3553A, gone up without giving the defendant an opportunity to contest whatever proof the government had. Judge, I think we'd have been in a much stronger position if the government hadn't brought in the witnesses and the other evidence. Look at the amount of attention that was paid by Judge Peterson to Ms. Barrera and that was crucial evidence. That witness was not on the list to be presented at the July 31st hearing, so absolutely yes. No, no, I understand that, but another option, as Judge Hamilton was pointing out, was for the district judge to say, listen, I'm going to go above guidelines because of disparities with other defendants, and it's clear the PSR understates his role, so one option would have been for him not to fret the government to introduce other evidence, but simply to say based on my sense of what this defendant has done in the PSR, I'm just going to go ahead under 3553A and depart upward. Yes. Are you saying you would have rathered that than him trying to make sure that intuition was introduced more evidence? Absolutely I would, Judge, because I am in a terrible position to try to argue a sentence as being improper in some ways, barring some procedural defect when a judge imposes a sentence within the guideline range. So if the judge has to justify a sentence and state his basis in the record for doing it, I'm in a superior position to come up on an appeal to challenge that vis-a-vis a sentence that's within the guideline range. There's no two ways about that, in my view. Could I ask you, Mr. Hillis, to address 18 U.S.C. 3661 whether it has any application here no limitation shall be placed on the information concerning background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence. Certainly. I find that to be a non-issue in the case. We accept that's true. The government puts that in its brief. The problem is that while the court can consider the information that's presented, it's supposed to be presented by the parties or be in the PSR. We've got something here that's beyond all of that Judge, and so if we're going to use the government to be the evidence gatherer, that's fine. So let's throw out a little different hypothetical. Let's suppose we've got a politically red-hot prosecution. The judge thinks a sweetheart deal has been cut with the defendant. And the government's been holding back evidence. Can the judge do anything about that? Interesting, because I think that this is kind of a hot topic in the Fourth Circuit where there's a district court judge who's rejecting agreements between the parties based on some of these same perceptions. It happens under 11 C1C from time to time. Sure. But there's an essential difference. So under C1C, my client can withdraw his guilty plea and proceed to trial. So I would like an available option. I have none here for my client under these circumstances. If the judge wants to interject and to make a record about what he thinks there are that's lurking behind the scenes, and he can establish that to impose a higher sentence, do it. But do it within the confines of 3553A. Not to do as he did here, because this doesn't do much to promote the administration of justice when we have the judge telling one party, go get me better, more punitive evidence so I can come back and give a sentence that's higher than the unobjected two guidelines that are established in the PSR, the 33 to 41 months. My client got launched based on this additional evidence. What about the judge making a comparison without perhaps other defendants? It's not in this record, but I gave so-and-so this sentence. No problem. So long as my client has the opportunity through counsel to rebut that or to say something, we'd like fair notice if the judge is going to consider those things. So there's a district court judge who has before kept a chart, and it was sort of a secret chart apparently. We don't like secrets. We would like to have sunshine in the courtroom. And for my client to know that information, Judge Kaney, and be able to adequately respond to it, notice and opportunity, that makes for a fair hearing. What happened here wasn't fair. That's our contention. So thank you very much. Thank you. Thanks to both counsel. And the case is taken under advisement, and the court will be in recess.